IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| MICHAEL W. TOLSTEDT,<br><br>             Plaintiff,<br>vs.<br><br>STANDARD INSURANCE COMPANY,<br><br>             Defendant. | CV-12-30-BLG-RFC-CSO<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Michael W. Tolstedt ("Tolstedt") claims in this ERISA action that Defendant Standard Insurance Company ("Standard"), wrongfully terminated his long-term disability ("LTD") benefits. The following motions are pending:

    (1) Tolstedt's Rule 52 Motion for Entry of Judgment (*Dkt. 16*); and

    (2) Standard's Motion for Summary Judgment or, in the alternative, Motion for Trial by Administrative Record (*Dkt. 19*).

Having reviewed the parties' arguments and the administrative record, the Court enters the following findings and recommendations.

I.    **BACKGROUND**

Mr. Tolstedt is insured under a group disability policy (the

"Policy") that Standard issued to his former employer, the Felt, Martin, Frazier & Weldon law firm. The parties agree that the Policy is governed by ERISA, 29 U.S.C. § 1001 *et. seq*.

On October 13, 2009, Tolstedt was admitted to the Billings Clinic Hospital and diagnosed with atherosclerotic coronary artery disease manifested by acute inferior wall myocardial infarction. *AR 374.* He underwent surgical stent procedures on October 13, 2009, and again on November 9, 2009. *AR 373, 359*.

On November 11, 2009, he filed a claim for long-term disability benefits, indicating that his illness was atherosclerosis caused by stress. *AR 747.* On February 5, 2010, Standard sent a letter to Tolstedt advising him that his claim was approved. *AR 705.* The letter advised that benefits became payable as of January 12, 2010, after the Benefit Waiting Period of 90 days, but did not state the specific basis for approval. The letter informed Tolstedt that Standard "will continue to monitor your medical condition or status" and that Standard would "monitor and document your continued eligibility for LTD Benefits...." *AR 706-07.*

On June 10, 2010, Standard sent Tolstedt another letter, advising him that Standard had reviewed information to determine the cause of

his disability and had concluded:

> The information in your file supports that you are Disabled by one or more conditions, including depression.  Since depression is considered to be mental disorders, we will apply the Mental Disorders Limitation to your claim.
> * * *
> The Standard began paying you LTD Benefits for mental disorders on January 12, 2010.  Therefore, the 24 month Maximum Benefit Period for mental disorders will end January 11, 2012.  For your benefits to continue, you must remain Disabled and meet all other provisions of your Group Policy.

*AR 199-200.*  Standard was relying on the section of the Policy governing disabilities subject to limited pay periods, in particular the section captioned: "Mental Disorders, Substance Abuse and Other Limited Conditions."  *AR 808.*  It provides:

> Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following:
>
> 1. Mental Disorders;
>
> 2.  Substance Abuse; or
>
> 3.  Other Limited Conditions.
>
> * * * *
> Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause (including any biological or biochemical disorder or imbalance of the brain) or the presence of physical symptoms.  Mental Disorder includes, but is not limited to,

bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders.

The Policy requires payment of LTD benefits "according to the terms of the Group Policy." *AR 795.* Tolstedt contends that he is entitled to benefits under the policy's "Own Occupation Definition Of Disability" which provides:

> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:
>
> 1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and
>
> 2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.
>
> * * * *
>
> Own Occupation means any employment, business, trade, profession, call or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins.  In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy.  If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license. *AR 798-99.*

Tolstedt contends that he has never been disabled by depression, but rather that his ongoing disability is coronary artery disease which permanently disables him from practicing law because his heart "can no longer withstand the rigors and stress of working as a trial attorney." *Dkt. 7 at 8 (citing Dr. Sample's letter at AR 658).* Dr. Sample's November 22, 2011 letter to Standard stated his opinion that Mr. Tolstedt's heart disease "permanently disabled [him] from practicing as a trial lawyer" and "that his depression would not have disabled him as practicing (*sic*) as a trial lawyer." *AR 658.*

Standard contends that Tolstedt's cardiac condition is not disabling. It relies on Dr. Garrison, a cardiologist that reviewed Tolstedt's medical records in February 2010 and concluded that Tolstedt "is capable of returning to full-time work as an attorney with reasonable continuity." *Dkt. 20 at 10 (citing AR 332).* Standard later hired another cardiologist, Dr. Axelrod, to review Tolstedt's medical records. On January 30, 2012, Dr. Axelrod opined that Tolstedt would have been capable of returning to work at a sedentary level three months following his last stent procedure. *AR 253.* Dr. Axelrod disagreed with Dr. Sample's assertion that Tolstedt continues to have stress-induced ischemia and found "no evidence in the supplied medical

records that Mr. Tolstedt actually experienced cardiac symptoms in relation to work stress." *AR 254.* Dr. Axelrod also disagreed that avoidance of work stress is the recognized standard of care for individuals like Mr. Tolstedt. *AR 254.*

## II. STANDARD OF REVIEW

### 1. *Summary Judgment*

Contending that there is no genuine issue of material fact, Standard argues that the case should be resolved under Fed.R.Civ.P. 56. Under this rule, summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving

party. *State Farm Fire and Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

    2.    ***De novo trial***

Tolstedt seeks entry of judgment in his favor under Fed.R.Civ.P. 52. Unlike a Rule 56 motion for summary judgment, Rule 52(a) contemplates "an action tried on the facts without a jury or with an advisory jury" with the Court "find[ing] the facts specially and stat[ing] its conclusions of law separately." The Ninth Circuit has held in this context that, where there are genuine issues of material fact, the Court's role is to conduct a trial on the administrative record, considering additional evidence where necessary. See *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir.1999). The Court is to "evaluate the persuasiveness of conflicting testimony," and make findings of fact. *Id.* In ruling on cross motions for judgment under Rule 52 and "conduct[ing] a *de novo* review of an administrator's denial of long-term disability benefits in an ERISA case, the Court effectively conducts a bench trial upon the record." *Allenby v. Westaff, Inc.*, 2006 WL 3648655, at * 1 (N.D.Cal. Dec.12, 2006) (citing *Kearney*, 175 F.3d at 1094–95).

The parties agree that the Court should review *de novo*

Standard's decision to terminate Tolstedt's disability benefits. *DKT 17 at 5; DKT 20 at 17.* Where *de novo* review applies, ... [t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir.2006) (en banc) ("*De novo* is the default standard of review"). "[T]he District Court's '*de novo* review of the parties' submissions' and resolution thereof, can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir.2003); see also *Kearney*, 175 F.3d at 1094-95.

The Court's first task, therefore, is to determine whether a genuine issue of material fact exists, and, if so, to conduct a *de novo* review of the administrative record, receiving additional evidence if necessary. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan,* 349 F.3d 1098, 1109 (9th Cir. 2003).

    3.    ***Burden of Proof***

Generally, a plaintiff suing for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), must establish his entitlement to benefits. *Muniz v.*

*AMEC Const. Management*, 2009 WL 866843, at * 5 (C.D. Cal. 2009) (*citing Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir.1992) and *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038 (11th Cir.1998)). Arguments that the burden of proof shifts to the insurer where the insurer has terminated benefits (as opposed to refusing to initially award them), have consistently been rejected. *Id. See also Ermovick v. Mitchell, Silberberg & Knupp LLP Long Term Disability Coverage for All Employees,* 2010 WL 3956819 * 6 (C.D. Cal.) (holding that the "fact that an employer terminates benefits does not shift the burden to the employer"); *Waissman v. Life Ins. Co. of North America,* 2010 WL 329957, at * 8 (N.D. Cal.) (holding that the burden of proof remains with the plaintiff).

## III.  PARTIES' ARGUMENTS

### 1.  *Tolstedt's Arguments*

Mr. Tolstedt contends that by approving his disability claim, Standard acknowledged that his coronary artery disease disabled him from continuing the practice of law. In addition, Mr. Tolstedt contends that Standard's initial letter of approval of disability benefits did not limit the benefit period to 24 months nor did it state that depression was the cause of his disability. Rather, Mr. Tolstedt contends that the

June 10, 2010 letter from Standard claiming that his depression was the cause of his disability was pretextual to limit his benefit period.

Mr. Tolstedt asks this Court to focus on the fact that the Standard and its reviewing psychiatrist, Dr. Toenniessen, never assessed the degree of his mental impairment nor actually stated that he was disabled due to his depression.  Further, Mr. Tolstedt contends that there was no evidence that he was disabled from practicing law because of his depression.

In support, he argues that although Dr. Toenniessen found that he was impaired, she failed to assess the degree of his impairment and failed to determine whether his mental impairment could be managed with medication.  Ultimately, he contends that Dr. Toenniessen never opined that his depression disabled him from performing the material duties of his occupation.  Mr. Tolstedt buttresses this argument by noting that none of his treating physicians or counselor ever opined that his depression was disabling.

Tolstedt argues that it is his coronary artery disease that prevents him from practicing law.  He contends that Standard's consulting cardiologists, Drs. Garrison and Axelrod, failed to consider whether his return to his occupation as a trial attorney will cause him

to suffer additional stress that would likely to trigger another heart attack. Mr. Tolstedt argues that Standard's cardiologists place too much emphasis on the fact that Dr. Sample's procedures may have reopened his arteries, ignoring that "stress fueled coronary artery disease will quickly close them again." *Dkt. 17 at 12.*

Tolstedt relies on Dr. Sample's letters of February 4, 2011 and November 22, 2011. *See AR 658-659.* Dr. Sample opines that Tolstedt is permanently disabled from practicing trial work and that it is Mr. Tolstedt's stress from working as a trial lawyer that was causative of his myocardial infarction. *AR 658.*

2. *Standard's Arguments*

Standard contends that it granted Tolstedt disability benefits based on his depression. *Dkt. 21 at 3, ¶ 8.* Standard states that it requested Tolstedt's medical records and waited for those medical records to arrive before sending them to an independent physician consultant to opine on Tolstedt's physical condition. *See Dkt. 20 at 7.* In the meantime, Standard contracted with psychiatrist Linda Toenniessen to review Tolstedt's therapy records. *Id. at 8.* After Standard received Tolstedt's cardiac records, it retained cardiologist Henry Garrison to review them and opine on Tolstedt's physical

condition.  *Id. at 9.*

Regarding Mr. Tolstedt's claim that his coronary artery disease was a ground for granting disability benefits, Standard contends that Tolstedt physically recovered from his heart attack by February 2010, and that his heart condition did not disable him from returning to the practice of law after that time.  *Dkt. 21 at 3-4.*  In support, Standard cites to Tolstedt's medical records and the terms of its Policy.

Looking first at Tolstedt's medical records, Standard refers to Dr. Garrison's conclusion that Tolstedt had done well on his cardiac rehabilitation, noting he "showed excellent exercise tolerance with no symptoms suggestive of myocardial ischemia." *AR 332.*  Dr. Garrison concluded that all of Tolstedt's post-infarction results showed "an excellent result has been achieved from the interventions," that Tolstedt "has no limitations or restrictions" and that he is "capable of returning to full-time work as an attorney with reasonable continuity." *Id.*

Further, Standard noted that Tolstedt's medical records showed that from October 23, 2009, through December 20, 2009, he underwent 19 sessions of monitored cardiac rehabilitation. *AR 408-409.* During the course of those sessions, his physical and mental health improved. *Id.*

Based on this evidence in the Administrative Record, Standard contends that it had a reasonable basis to conclude that Tolstedt's heart condition did not preclude his continued employment as an attorney.

From December 2009 through January 2012, Standard notes that Mr. Tolstedt has seen his cardiologists only three times. In those three visits, his cardiologists noted no negative events that would be of a health concern. On February 4, 2011, Dr. Sample classified his cardiac health at a "functional therapeutic class I rating." *AR 285*. This class rating reflects the healthiest class with "no symptoms and no limitations in ordinary physical activity." *AR 250*. Dr. Sample informed Tolstedt that he only needed to be seen annually and that he needed no medication other than daily doses of aspirin.

As part of the appeal process, Standard had Dr. Richard Axelrod review all of Tolstedt's medical records and documentation in support of his claim for continued disability benefits due to his heart condition. Dr. Axelrod reviewed the documentation as well as Dr. Garrison's report and concluded that Tolstedt was physically capable of returning to working as an attorney as early as February 9, 2010, and that there were no medical records that supported a conclusion that his

myocardial infarction was related to his work stress. *AR 253-254.* Dr. Axelrod disputed Dr. Sample's conclusions regarding Tolstedt having suffered work stress-induced ischemic events. *Id.*

### IV. DISCUSSION

#### 1. *Fed.R.Civ.P. 56 -Summary Judgment*

As set forth above, the Court's first inquiry is whether there exists a genuine issue of fact for *de novo* review by the Court. Because Mr. Tolstedt has indisputably received all benefits to which he would be entitled for any disability caused by depression or "Mental Disorders," and because he does not contend that his depression is disabling, the central issue before the Court is Tolstedt's contention that he is entitled to continuing permanent disability benefits because of his inability to continue his occupation as a trial attorney due to his coronary artery disease.

Standard's motion, along with its Statement of Undisputed Facts (*Dkt. 21*), cited to evidence in the administrative records that Tolstedt: (1) physically recovered from his heart attack by February, 2010, (2) had only seen his cardiologist on three occasions since then; (3) is not taking any prescription medication, and (4) is doing well according to all objective testing at his cardiologist visits. *Id. at 3-4, ¶ 9.* The

burden shifts to Tolstedt, therefore, to raise a genuine issue of material fact as to his disability resulting from his coronary artery disease.

In support of his claim that he is permanently disabled from his occupation as a trial attorney, he relies on the statements and letters from his treating physician, Dr. Scott Sample. As noted above, Dr. Sample's letters dated February 4 and November 22, 2011, state that Tolstedt's coronary artery disease is what permanently disables him from practicing as a trial lawyer. *AR 658-659*. Specifically, Dr. Sample opines that "Mr. Tolstedt's heart can no longer withstand the rigors and stress of working as a trial attorney...." *AR 658*.

Careful review of Dr. Sample's letters reveals his narrow determination that Tolstedt cannot perform the occupation of a trial attorney. But in determining whether a claimant is disabled from his "Own Occupation," Standard may consider not only Mr. Tolstedt's prior work as a trial attorney, but also any work within the scope of his license to practice law. As earlier quoted, the Policy provides that Standard is not limited to looking at the way Mr. Tolstedt practiced law, but may "look at the way the occupation is generally performed in the national economy," including work "as broad as the scope of your [professional] license." *AR at 799*.

Dr. Sample's narrow opinion that Tolstedt cannot perform the duties of a trial attorney does not fully meet the broader definition of "Own Occupation" found in the Policy.  Despite his burden to do so, Tolstedt has presented no evidence of his inability to use his professional license in other ways in which lawyers generally performs in the national economy.  The practice of law is not limited to trial work.  Consequently, the Court must conclude that Dr. Sample's opinion does not create a genuine issue of material fact that Standard wrongfully refused to pay Mr. Tolstedt disability benefits beyond January 12, 2012.

## 2. *Fed.R.Civ.P. 52 -Entry of Judgment*

Even if this Court were to conclude that a genuine issue of material fact exists and to review the Administrative Record under a Rule 52 analysis, the Court's conclusion would be the same.

In Dr. Sample's November 22, 2011 letter to Standard, he states, in pertinent part, that:

> Stress, however, is a well-known and documented factor in causing coronary artery disease.  Before his October 13, 2009 myocardial infarction, Mr. Tolstedt had practiced for many years as a trial lawyer, an occupation that has a high incidence of stress-related illnesses, including heart disease.  Because Mr. Tolstedt's heart can no longer withstand the rigors and stress of working <u>as a trial attorney</u>, I have strongly urged him to find less

stressful employment. It is my professional opinion that because of his heart disease, Mr. Tolstedt is permanently disabled from practicing <u>as a trial lawyer</u>.

*AR at 658 (emphasis added).*

Although courts may give significant weight to the opinions of treating physicians, courts are not required under ERISA to accord such opinions special deference. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Factors affecting the weight of a treating physician's opinion include the length and nature of the doctor-patient relationship, the level of the doctor's expertise, and the compatibility of the doctor's opinion with the other evidence. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d at 1109 n.8.

The sole medical opinion in the record to support Mr. Tolstedt's claim that he is disabled from practicing law due to his heart condition comes from Dr. Sample. Even if the Court decided to give Dr. Sample's opinions great weight, his opinions alone, as discussed above, do not meet the Policy's definition of disability for the occupation of an attorney, which is not restricted to work as a trial attorney. Nowhere does Dr. Sample state that Mr. Tolstedt's heart condition precludes him from performing anything other than his duties as a trial lawyer.

There are many activities that lawyers can perform other than trial work. Standard's vocational case manager considered information on the practice of law in Montana, including the following descriptions: acting as trustee, guardian, or executor; drafting wills, trusts; advising corporate clients; preparing business contracts; settling labor disputes; teaching college courses in law; drawing up legal documents, and others. *AR at 344.*

Moreover, from December 2009 through January 2012, Mr. Tolstedt saw his cardiologist three times. In those visits, his cardiologist notes no negative events that would be of a health concern. In fact, on February 4, 2011, Dr. Sample classified his cardiac health at a "functional therapeutic class I rating." *AR 285.* This class rating reflects the healthiest class with "no symptoms and no limitations in ordinary physical activity." *AR 250.* Dr. Sample informed Tolstedt that he only needed to be seen on an annual basis.

The other medical opinions regarding Mr. Tolstedt's heart condition come from Standard's consulting cardiologists Drs. Garrison and Axelrod. Dr. Garrison performed the initial evaluation of Tolstedt's coronary artery disease in February 2010, concluding that Tolstedt had sufficiently recovered from his infarction such that, from a

cardiac health perspective, he could return to his occupation as an attorney. Dr. Axelrod performed a second evaluation in January 2012, concluding that, from a cardiac health perspective, Tolstedt could have returned to work in February 2010. *AR 253.*

The parties argue at some length about why Standard initially decided to pay disability benefits. Tolstedt argues that Standard clearly decided to award benefits based on his heart condition. Standard, on the other hand, argues that it decided to award benefits based on Tolstedt's depression. The Court need not resolve this dispute, however, because it is not determinative of the issue before the Court – whether Mr. Tolstedt has been disabled beyond January 2012 due to his heart condition. The Policy provides that Standard may investigate Tolstedt's claim "at any time" and may have an insured "examined at reasonable intervals by specialists of our choice." *AR at 810.* The insured must remain disabled to continue to receive benefits. *AR at 809 ("Return To Work Responsibility").*

No treating or reviewing cardiologist concluded that Tolstedt was so disabled by his heart condition that he was unable to practice in the legal profession.

For these reasons, this Court finds entry of judgment in

Standard's favor is appropriate.

## V. <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that Plaintiff Tolstedt's Motion for Entry of Judgment pursuant to Fed.R.Civ.P. 52 (*Dkt. # 16*) be DENIED and Defendant Standard's Motion for Summary Judgment (*Dkt. # 19*) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 3rd day of August, 2012.

      /s/ Carolyn S. Ostby
     United States Magistrate Judge